UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re                                                        Chapter 11

      307 Assets LLC                                     Case no.  23-10027 (JPM)

                Debtor.
------------------------------------------------------------x

## <u>AMENDED DISCLOSURE STATEMENT</u>

**THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY AFFECT CREDITORS' DECISIONS TO ACCEPT OR REJECT THE PLAN OF REORGANIZATION ANNEXED HERETO AS EXHIBIT A.  ALL CREDITORS ARE URGED TO READ THIS DISCLOSURE STATEMENT CAREFULLY.  ALL CAPITALIZED TERMS CONTAINED IN THIS DISCLOSURE STATEMENT SHALL HAVE THE SAME MEANING AS CAPITALIZED TERMS CONTAINED IN THE PLAN OF REORGANIZATION.**

**COURT APPROVAL OF THE DISCLOSURE STATEMENT DOES NOT CONSTITUTE COURT APPROVAL OF THE TERMS OF THE PLAN.**

Mark A. Frankel
BACKENROTH FRANKEL & KRINSKY, LLP
488 Madison Avenue
New York, New York 10022
Telephone: (212) 593-1100
Facsimile: (212) 644-0544

ATTORNEYS FOR THE DEBTOR

## <u>INTRODUCTION</u>

The Debtor submits this Disclosure Statement ("Disclosure Statement") to explain its Plan of Reorganization ("Plan") under Chapter 11 of the United States Bankruptcy Code. A copy of the Plan is attached hereto as Exhibit A. All Creditors are urged to review the Plan, besides reviewing this Disclosure Statement. All capitalized terms used but not defined shall have the meaning set forth in the Plan.

This Disclosure Statement is not intended to replace a review and analysis of the Plan. Rather, it is submitted as a review of the Plan to explain the terms and implications of the Plan for Creditors. The Debtor urges Creditors to contact its counsel with questions.

On _____, 2023, after notice and a hearing, the Bankruptcy Court entered an order approving this Disclosure Statement as containing information of a kind and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the Debtor and the condition of the Debtor's books and records, to enable Creditors whose votes are being solicited to make an informed judgment whether to accept or reject the Plan..

EXCEPT AS SET FORTH IN THIS DISCLOSURE STATEMENT, NO REPRESENTATIONS CONCERNING THE DEBTOR, ITS ASSETS, ITS PAST OR FUTURE OPERATIONS, OR THE PLAN ARE AUTHORIZED, NOR ARE ANY SUCH REPRESENTATIONS TO BE RELIED UPON IN ARRIVING AT A DECISION WITH RESPECT TO THE PLAN.

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN SUPPLIED BY THE DEBTOR. THE DEBTOR'S BOOKS AND RECORDS HAVE BEEN USED TO PROVIDE THE INFORMATION CONCERNING THE DEBTOR'S

FINANCIAL CONDITION AS SET FORTH IN THIS DISCLOSURE STATEMENT.  BASED

UPON THE INFORMATION MADE AVAILABLE, DEBTOR'S COUNSEL HAS NO

INFORMATION TO INDICATE THAT THE INFORMATION DISCLOSED HEREIN IS

INACCURATE.  NEITHER THE DEBTOR NOR ITS COUNSEL, HOWEVER, IS ABLE TO

STATE DEFINITIVELY THAT THERE IS NO INACCURACY HEREIN OR THAT FUTURE

EVENTS MAY NOT RENDER THE INFORMATION CONTAINED HEREIN

INACCURATE.

After reviewing this Disclosure Statement indicate your vote to accept or to reject

the Plan on the enclosed ballot, and return the ballot to counsel for the Debtor to be received by

_____, 2023.

The Bankruptcy Court has entered an Order fixing _____, 2023,

at ___.m., at the United States Bankruptcy Court, One Bowling Green, New York, NY 10004, as

the date, time and place for the hearing on confirmation of the Plan, and fixing

_____, 2023, as the last date for filing objections to Plan confirmation.

## **BACKGROUND**

1.     On January 9, 2023, the Debtor filed a Chapter 11 petition under Title 11

of the United States Code, 11 U.S.C. 101 et seq. (the "Bankruptcy Code").

2.     The Debtor is the owner of the real property at 307-309 Sixth Avenue,

New York, New York 10022 (the "Property").

3.      The Property is pictured below:



4.      The value of the Property, as estimated by the Debtor in its Chapter 11 schedules is $14,500,000.  The Property consists of vacant retail space but has development potential.  The Debtor's Chief Restructuring Officer spoke to various real estate brokers who state that to achieve its potential value, the Property may be marketed as both vacant retail space and as a development site.  The actual market value of the Property will be determined by the sale of the Property under the Plan.

5.      307-309 Sixth Avenue LLC (the "First Mortgagee") holds a judgment of foreclosure and sale entered on June 6, 2022 in an action entitled 307-309 Sixth Avenue LLC v. 307 Assets LLC; et al. in the Supreme Court of the State of New York, New York County, Index

No.: 850138/2020 (the "Foreclosure Judgment"). The total amount due under the Foreclosure

Judgment as of the January 9, 2023 filing date is $15,077,472

6.      Sei Insieme LLC (the "Second Mortgagee") asserts a second mortgage in

the amount of $7,500,000.

7.      The Property is also subject unpaid New York City real estate tax and

other liens in the amount of approximately $83,366.

8.      Secured claims total approximately $22,660,838. The Debtor is aware of

general unsecured claims totaling about $38,500.

9.      Recognizing that the Property was underwater, George Filoupolos, the

Debtor's beneficial owner agreed not to contest the foreclosure and to transfer ownership to an

entity friendly to the Mortgagee. In June 2022, he thus transferred the Debtor's sole membership

interest from Emilio Holdings LLC to 307-309 Sixth Owner LLC. 307-309 Sixth Owner LLC is

the Debtor's sole member. The Mortgagee released Mr. Filoupolos' personal guarantee in

connection with the transfer.

10.     The Second Mortgagee contends that the transfer of the membership

interests may have resulted in a merger of the deed and note. The Debtor believes that the

merger doctrine does not apply because no mortgage was extinguished by the transfer of

membership interests as evidenced by the subsequent Supreme Court foreclosure judgment. In

addition, even if it were possible to vacate the foreclosure judgment, the beneficial owner of 307-

309 Sixth Owner LLC has no "insider" relationship to the First Mortgagee, as the term insider is

defined by the Bankruptcy Code.

11.     After beneficial ownership of the Property was transferred to 307-309 Sixth Owner LLC, efforts were made to enhance the Property value by advancing the Property's development prospects.  Thus the Debtor applied for zoning approval for development, as a prerequisite to landmark commission approval and Department of Buildings approval.  The initial Department of Buildings application incorrectly listed the First Mortgagee as owner.  That mistake was subsequently corrected.

12.     After the Foreclosure Judgment was entered, the referee scheduled a sale for December 14, 2022.

13.     On December 13, 2022, the Second Mortgagee filed a Chapter 11 petition and on December 14, 2022, the Bankruptcy Court stayed Foreclosure Judgment sale.  Except for some routine filings, the Second Mortgagee's bankruptcy has since been dormant.

14.     This case was primarily filed to effectuate an orderly sale of the Property with marketing pursuant to a Chapter 11 plan to ensure a fair recovery for all parties in interest, including the Second Mortgagee.  Since the Debtor has no income, the First Mortgagee loaned the Debtor the funds necessary to retain Backenroth Frankel & Krinsky, LLP as bankruptcy attorneys and FIA and David Goldwasser as CRO.  The First Mortgagee has agreed to subordinate its loans for fees paid to Debtor's counsel and Debtor's Chief Restructuring Officer to all other claims in the case.

## DEBTOR'S PLAN OF REORGANIZATION

## CLASSIFICATION AND TREATMENT OF CLAIMS

### Class 1

15.     **Classification** – New York City liens.  Claims total approximately $83,366.

16.     **Treatment** – Payment in full in Cash of Allowed Amount on the Effective Date, plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

17.     **Voting**– **Voting** Unimpaired and deemed to have accepted the Plan.

### Class 2

18.     **Classification** – First Mortgagee. Claim totals $15,077,472.

19.     **Treatment** – Payment of available Cash up to Allowed Amount of Class 2 Claim, after payment of Administrative Expenses, priority tax Claims, Class 1 Claims and Class 4 Claims.  If the Property Sale Proceeds are insufficient to pay the Claim in full, the deficiency amount shall be treated as a Class 5 Claim.

20.     **Voting** – Impaired and entitled to vote to accept or reject the Plan.

### Class 3

21.     **Classification** – Second Mortgagee.  Claim totals approximately $7,500,000 as of the filing date.

7

22.    **Treatment** – Payment of available Cash up to Allowed Amount of the Class 3 Claim, after payment of Administrative Expenses, priority tax Claims, Class 1 Claims, Class 2 Claims and Class 4 Claims.  If the Property Sale Proceeds are insufficient to pay the Claim in full, the deficiency amount shall be treated as a Class 5 Claim.

23.    **Voting** –  Impaired and entitled to vote to accept or reject the Plan.

### Class 4

24.    **Classification** –   Priority Claims under Sections 507(a)(2),(3),(4),(5),(6), and (7) of the Bankruptcy Code.  Claims total approximately $0.

25.    **Treatment** – Payment in full in Cash of Allowed Amount on the Effective Date, plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

26.    **Voting**–Unimpaired and deemed to have accepted the Plan.

### Class 5

27.    **Classification** – General Unsecured Claims.  Claims total approximately $38,500

28.    **Treatment** – Payment of available Cash up to Allowed Amount of Class 5 Claims, after payment of Administrative Expenses, priority tax Claims, Class 1, 2, 3, and 4 Claims.

29.    **Voting** – Impaired and entitled to vote to accept or reject the Plan.

### Class  6

30.    **Classification** – Interests Holders.

8

31.  **Treatment** – Payment of available cash after payment of Administration Claims, unclassified priority tax Claims, and Class 1, 2, 3, 4 and 5 Claims.

32.  **Voting** – Impaired and entitled to vote to accept or reject the Plan.

## UNCLASSIFIED PRIORITY TAX CLAIMS

33.  Priority tax Claims under Sections 507(a)(8) of the Bankruptcy Code total approximately 0 based on the Debtor's Schedules and filed proofs of claim. The treatment of such Claims shall be payment in full in Cash of each Allowed Claim on the Effective Date, plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

## ADMINISTRATIVE EXPENSES

34.  Allowed Administrative Expenses shall be paid in full, in cash on the Effective Date, or the date such Administrative Expense becomes Allowed or as soon as practicable thereafter, except if the holder of an Allowed Administrative Expense agrees to a different treatment; provided, however, that Allowed Administrative Expenses representing obligations in the ordinary course of business or assumed by the Debtor shall be paid in full or performed by the Debtor in the ordinary course of business or under the terms and conditions of the particular transaction.  The Debtor anticipates there will be unpaid Administrative Expenses totaling approximately $20,000 for legal fees and $435,000 for real estate broker fees.

35.  All outstanding United States Trustee fees shall be paid as they come due.

## MEANS FOR IMPLEMENTATION

## PAYMENT OF CLAIMS AND OBJECTIONS TO CLAIMS

42.    The Debtor shall be disbursing agent under the Plan without a bond.  The Debtor reserves the right to file objections to claims in the event grounds exist to object to particular claims, for a period of 60 days after the Effective Date.  On the initial distribution date and on each distribution date as may thereafter be necessary, the Debtor shall maintain an undetermined claims distribution reserve for the holders of undetermined claims as of such date in a sum not less than the amount required to pay each such undetermined claim if such claim was allowed in full.  To the extent that an undetermined claim becomes an Allowed Claim, the distributions reserved for such Allowed Claim, shall be released from the undetermined claims distribution reserve and paid to the holder of such Allowed Claim.  After all the amounts of all undetermined claims have been fixed, the balance of the undetermined claims distribution reserve shall thereafter be paid in accordance with the Plan.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

43.    Except for executory contracts and unexpired leases the Debtor assumes before the Confirmation Date, all unexpired leases and executory contracts shall be deemed rejected under the Plan.  In the event of a rejection which results in damages a proof of claim for such damages must be filed by the damaged party with the Court within sixty (60) days after the rejection date. All Allowed Claims arising from the rejection of any Executory Contract or unexpired lease shall be treated as Unsecured Claims.  Any Claim arising from the rejection of any Executory Contract or unexpired lease not filed with the Court within the time period

provided herein shall be deemed discharged and shall not be entitled to participate in any

distribution under the Plan.

## LIQUIDATION ANALYSIS

44.    In a liquidation under Chapter 7 of the Bankruptcy Code, the Debtor's

assets would be sold and the sale proceeds distributed to Creditors in their order of priority.  The

Debtor believes that the Plan provides at least an equivalent return for the Debtor's Estate as

could be achieved in a liquidation.  As set forth on Exhibit B hereto, the Debtor projects that in a

Chapter 7 liquidation, the return to the Debtor's Estate would be reduced by an additional layer

of administration legal expenses and commissions, which the Debtor estimates would total about

10% of the sale proceeds.

## LITIGATION ANALYSIS

45.    The Debtor knows of no pending litigation or potential litigation.  The

Debtor will attempt to settle or litigate those claims.

## FINANCIAL PROJECTIONS AND LIQUIDATION ANALYSIS

46.    Annexed hereto as Exhibit B is a balance sheet and liquidation analysis.  If

a liquidation occurs, the value of the Debtor's Property would be reduced by administration

expenses and a forced sale discount to fair market value.

## MANAGEMENT OF THE DEBTOR

47.    The Debtor is managed by David Goldwasser, CRO.  Post-confirmation

management shall remain unchanged.

## TAX CONSEQUENCES

48.    The Debtor does not believe there will be any negative tax consequences to the Debtor or to Creditors under the Plan.  To the extent that a Creditor is not paid in full under the Plan, such Creditor may be entitled to a bad debt deduction.  If a Creditor has taken a bad debt deduction, Plan distributions may be taxable as income.

49.    THE DEBTOR DOES NOT PURPORT, THROUGH THIS DISCLOSURE STATEMENT, TO ADVISE THE CREDITORS OR INTEREST HOLDERS REGARDING THE TAX CONSEQUENCES OF THE TREATMENT OF THE CREDITORS AND INTEREST HOLDERS UNDER THE PLAN.  CREDITORS AND INTEREST HOLDERS SHOULD SEEK INDEPENDENT COUNSEL CONCERNING THE TAX CONSEQUENCES OF THEIR TREATMENT UNDER THE PLAN.

## VOTING PROCEDURES AND REQUIREMENTS

50.    A ballot to be used for voting to accept or reject the Plan is enclosed with this Disclosure Statement.  Each Creditor is entitled to execute the ballot, and return it to the undersigned to be considered for voting purposes.  The Bankruptcy Court has directed that, in order to be counted for voting purposes, ballots for the acceptance or rejection of the Plan must be received no later than _____, 2023 by email to mfrankel@bfklaw.com or by delivery to the following address:  Backenroth Frankel & Krinsky, LLP, 488 Madison Avenue, New York, New York 10022, Attn:  Mark A. Frankel, Esq.

51.    Each Creditor of the Debtor whose Claim is impaired under the Plan is entitled to vote, if either (i) its Claim has been scheduled by the Debtor, or (ii) it has filed a proof of claim on or before the last date set by the Bankruptcy Court for such filings.

52.     Any Claim as to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the Claim in an amount which it deems proper for the purpose of accepting or rejecting the Plan upon motion by a Creditor whose Claim is subject to an objection.  Such motion must be heard and determined by the Bankruptcy Court prior to the date established by the Court to confirm the Plan.

53.     A Creditor's vote may be disregarded if the Bankruptcy Court determines that the Creditor's acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

54.     The Bankruptcy Code defines acceptance of a Plan by a class of Creditors as acceptance by holders of two-thirds in dollar amount and a majority in number of the Claims of that class which actually cast ballots for acceptance or rejection of the Plan.

55.     The Bankruptcy Code defines acceptance of a Plan by a class of Interests as acceptance by holders of two-thirds in amount of the allowed Interests of such class held by holders of such Interests.

## **CONFIRMATION OF THE PLAN**

56.     Section 1128(a) of the Bankruptcy Code requires that the Bankruptcy Court, after notice, hold a hearing on confirmation of the Plan (the "Confirmation Hearing"). Section 1128(b) provides that any party in interest may object to confirmation of the Plan.

57.     By order of the Bankruptcy Court dated _____, 2023, the Confirmation Hearing has been scheduled for _____, 2023, at ___ .m., in the Honorable _____'s Courtroom, One Bowling Green, New York, NY

13

10004.  The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the Confirmation Hearing or any adjourned Confirmation Hearing.  Any objection to confirmation of the Plan must be made in writing and filed with the Bankruptcy Court with proof of service and served upon the following by _____, 2023:  Backenroth Frankel & Krinsky, LLP, 488 Madison Avenue, New York, New York 10022, Attn:  Mark A. Frankel, Esq.  Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014.

58.     At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of Section 1129 of the Bankruptcy Code have been satisfied to enter an order confirming the Plan.  The applicable requirements are:  (a)  The Plan complies with the applicable provisions of the Bankruptcy Code, (b) the Debtor has complied with the applicable provisions of the Bankruptcy Code; (c) the Plan has been proposed in good faith and not by any means forbidden by law, (d) any payment made or promised or by a person issuing securities or acquiring property under the Plan, for services or for costs and expenses in, or in connection with, the Bankruptcy Case, or in connection with the Plan and incident to the Bankruptcy Case, has been disclosed to the Bankruptcy Court, and any such payment made before the confirmation of the Plan is reasonable, or if such payment is to be fixed after confirmation of the Plan, such payment is subject to the approval of the Bankruptcy Court as reasonable, (e) the Debtor has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the Plan, as a director, officer, or voting trustee of the Debtor, an affiliate of the Debtor participating in a Plan with the Debtor, or a successor to the Debtor under the Plan, and the appointment to, or continuance in, such office of such individual, is consistent with the interests of Creditors and equity security holders and with public policy, and the Debtor has disclosed the

14

identity of any insider that will be employed or retained by the reorganized Debtor, and the

nature of any compensation for such insider, (f) with respect to each class of impaired Claims,

either each holder of a Claim or interest of such class has accepted the Plan, or will receive or

retain under the Plan on account of such Claim or interest property of a value, as of the Effective

Date of the Plan, an amount that is not less than the amount that such holder would so receive or

retain if the Debtor was liquidated on such date under Chapter 7 of the Bankruptcy Code, (g)

each class of Claims or Interests has either accepted the Plan or is not impaired under the Plan,

(h) except if the holder of a particular Claim has agreed to a different treatment of such Claim,

the Plan provides that Administrative Expenses and priority Claims will be paid in full on the

Effective Date, (i) at least one class of impaired Claims has accepted the Plan, determined

without including any acceptance of the Plan by any insider holding a Claim of such class, and

(j) confirmation of the Plan is not likely to be followed by the liquidation, or the need for further

financial reorganization of the Debtor or any successors to the Debtor under the Plan unless such

liquidation or reorganization is proposed in the Plan.

59.     The Debtor believes that the Plan satisfies all of the statutory requirements

of Chapter 11 of the Bankruptcy Code, that the Debtor has complied or will have complied with

all of the requirements of Chapter 11, and that the proposals contained in the Plan are made in

good faith.

## **<u>CRAMDOWN</u>**

60.     In the event that any impaired class of Claims does not accept the Plan, the

Bankruptcy Court may still confirm the Plan at the request of the Debtor if, as to each impaired

class which has not accepted the Plan, the Plan "does not discriminate unfairly" and is "fair and equitable."

61.    The Debtor intends to invoke the cramdown provisions of section 1129(b) as to any impaired class that does not accept the Plan.

62.    A plan of reorganization does not discriminate unfairly within the meaning of the Bankruptcy Code if no class receives less than it is legally entitled to receive for its Claims or equity Interests.  "Fair and equitable" has different meanings for Secured and Unsecured Claims.

63.    With respect to a Secured Claim, "fair and equitable" means either: (a)  the impaired Secured Creditor retains its Liens to the extent of its Allowed Claim and receives deferred cash payments at least equal to the allowed amount of its Claim with a present value as of the Effective Date at least equal to the value of such Creditor's interest in the property securing its Liens; (b) property subject to the Lien of the impaired Secured Creditor is sold free and clear of that Lien, with that Lien attaching to the proceeds of the sale; or  (c) the impaired Secured Creditor realizes the "indubitable equivalent" of its Claim under the Plan.

64.    With respect to an Unsecured Claim, "fair and equitable" means either: (a) each impaired Unsecured Creditor receives or retains property of a value equal to the amount of its Allowed Claim; or (b) the holders of Claims and Interests that are junior to the Claims of the dissenting class will not receive any property under the Plan.

65.    In the event one or more classes of impaired Claims rejects the Plan, the Bankruptcy Court will determine at the Confirmation Hearing whether the Plan is fair and equitable and does not discriminate unfairly against any rejecting impaired class of Claims.

16

## **CONCLUSION**

The Debtor urges the Debtor's Creditors to accept the Plan.

Dated: New York, New York
         March 30, 2023

307 Assets LLC
Debtor and Debtor in Possession

By:      s/ David Goldwasser, CRO

BACKENROTH FRANKEL & KRINSKY, LLP
Attorneys for Debtor

By:      s/Mark Frankel
         488 Madison Avenue
         New York, New York 10022
         (212) 593-110

17

# Exhibit A to Disclosure Statement

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re                                                                  Chapter 11

      307 Assets LLC                             Case no.  23-10027 (JPM)

                Debtor.
-------------------------------------------------------------x

**<u>AMENDED PLAN OF REORGANIZATION</u>**

Mark A. Frankel
BACKENROTH FRANKEL & KRINSKY, LLP
488 Madison Avenue
New York, New York 10022
Telephone: (212) 593-1100
Facsimile: (212) 644-0544

ATTORNEYS FOR THE DEBTOR

## INTRODUCTION

307 Assets LLC ("Debtor"), proposes this Plan of Reorganization to its Creditors.

UPON CONFIRMATION, THIS PLAN SHALL BE A BINDING OBLIGATION BETWEEN

AND AMONG THE DEBTOR AND EACH OF THE DEBTOR'S CREDITORS (AS SUCH

TERMS ARE DEFINED BELOW).

## DEFINITIONS

As used in this Plan, the following terms will have the meanings hereinafter set

forth:

1.      "Administrative Expense" Any cost or expense of administration of the

Bankruptcy Case entitled to priority under section 507(a)(1) and allowed under section 503(b) of

the Bankruptcy Code, and any fees or charges assessed against the Debtor's Estate under Chapter

123, Title 28, United States Code.

2.      "Administrative Expense Claim" shall mean claim for payment of an

Administrative Expense.

3.      "Allowance Date" shall mean the date which a Disputed Claim becomes

an Allowed Claim by Final Order.

4.      "Allowed Amount" shall mean the amount of a Claim:  (a) if a proof of

claim is filed timely or, with leave of the Court late filed which (i) no party in interest files an

objection or (ii) which is allowed by a Final Order; or (b) which is listed on the Debtor's

Schedules or any amendments thereto but which is not listed as disputed, unliquidated or

contingent.

2

5.      "Allowed Claim" shall mean a Claim: (a) if a proof of claim is filed timely or, with leave of the Court late filed which (i) no party in interest files an objection or (ii) which is allowed by a Final Order; or (b) which is listed on the Debtor's Schedules or any amendments thereto but which is not listed as disputed, unliquidated or contingent.

6.      "Allowed Secured Claim" shall mean a Secured Claim to the extent it is an Allowed Claim.

7.      "Allowed Unsecured Claim" shall mean an Unsecured Claim to the extent it is an Allowed Claim.

8.      "Bankruptcy Case" shall mean this Chapter 11 bankruptcy case.

9.      "Bankruptcy Code" shall mean Title 11 of the United States Code, 11 U.S.C. § 101 et. seq.

10.     "Bankruptcy Court" shall mean the Court as defined below.

11.     "Bar Date" shall mean March 13, 2023.

12.     "Cash" shall mean all cash and cash equivalents which evidence immediately available funds in United States dollars.

13.     "Claim" shall mean a right to payment as set forth in § 101(5) of the Bankruptcy Code.

14.     "Claimant" shall mean the holder of a Claim.

15.     "Confirmation Date" shall mean the date of the entry of the Confirmation Order.

3

16.    "Confirmation Hearing" shall mean the hearing under the Bankruptcy

Code § 1128 before the Bankruptcy Court regarding the proposed confirmation of the Plan.

17.    "Confirmation Order" shall mean the order confirming the Plan.

18.    "Court" shall mean the United States Bankruptcy Court for the

SOUTHERN District of New York.

19.    "Creditor" shall mean any entity that holds a Claim against the Debtor.

20.    "Debtor" shall mean 307 Assets LLC.

21.    "Disputed Claim" shall mean the whole or any portion of any Claim

against the Debtor to which an objection is timely filed as to which a Final Order has not been

entered allowing or disallowing such Claim or any portion thereof.

22.    "Effective Date" shall mean the closing date of the sale of the Property

under the Plan.

23.    "Estate" shall mean the estate of the Debtor created upon the

commencement of the Bankruptcy Case under Section 541 of the Bankruptcy Code.

24.    "Executory Contracts" shall mean "executory contracts" and "unexpired

leases" as such terms are used within Section 365 of the Bankruptcy Code.

25.    "Final Order" shall mean an order that has not been reversed, modified,

amended or stayed, and as to which the time to appeal or to seek review or certiorari thereof has

expired, and as to which no appeal, review or rehearing is pending.

26.    "First Mortgagee" shall mean 307-309 Sixth Avenue LLC.

4

27.    "Interest" shall mean an existing ownership interest in the Debtor.

28.    "Interest Holder" shall mean a holder and owner of an existing Interest in the Debtor.

29.    "Legal Rate" shall mean the applicable interest rate in 28 U.S.C. § 1961 as of the Petition Date.

30.    "Lien" shall mean a charge against or interest in property to secure payment of a debt or performance of an obligation.

31.    "Loan Documents" shall mean the agreements between the Debtor and the First Mortgagee.

32.    "Petition Date" shall mean January 9, 2023.

33.    "Plan" shall mean this Plan of Reorganization, and all modifications and/or amendments hereto.

34.    "Property" shall mean 307-309 Sixth Avenue, New York, New York 10022.

35.    "Property Sale Proceeds" shall mean the proceeds of the sale of the Property under the Plan.

36.    "Purchaser" shall mean the purchaser of the Property under the Plan or its designee.

37.    "Second Mortgagee" shall mean Sei Inseime LLC.

38.    "Secured Claim" shall mean a Claim secured by a Lien on property included within the Debtor's Estate.

39.    "Secured Creditor" shall mean the owner or holder of a Secured Claim.

40.    "Unsecured Claim" shall mean a Claim for which the Claimant does not hold (a) a valid, perfected and enforceable Lien, security interest or other interest in or encumbrance against Debtor or the Debtor's Estate; (b) a right to setoff to secure the payment of such Claim.  An Unsecured Claim includes, but is not limited to, a Claim for damages resulting from rejection of any Executory Contract under Section 365 of the Bankruptcy Code, and does not include administrative of priority claims.

41.    "Unsecured Creditor" shall mean the owner or holder of an Unsecured Claim.

## CLAIMS CLASSIFICATION AND TREATMENT

### Class 1

42.    **Classification** – New York City liens.  Claims total approximately $83,366.

43.    **Treatment** – Payment in full in Cash of Allowed Amount on the Effective Date, plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

44.    **Voting**– **Voting** Unimpaired and deemed to have accepted the Plan.

### Class 2

45.    **Classification** – First Mortgagee. Claim totals $15,077,472.

6

46.    **Treatment** – Payment of available Cash up to Allowed Amount of Class 2 Claim, after payment of Administrative Expenses, priority tax Claims, Class 1 Claims and Class 4 Claims.  If the Property Sale Proceeds are insufficient to pay the Claim in full, the deficiency amount shall be treated as a Class 5 Claim.

47.    **Voting** – Impaired and entitled to vote to accept or reject the Plan.

### Class 3

48.    **Classification** – Second Mortgagee.  Claim totals approximately $7,500,000 as of the filing date.

49.    **Treatment** – Payment of available Cash up to Allowed Amount of the Class 3 Claim, after payment of Administrative Expenses, priority tax Claims, Class 1 Claims, Class 2 Claims and Class 4 Claims.  If the Property Sale Proceeds are insufficient to pay the Claim in full, the deficiency amount shall be treated as a Class 5 Claim.

50.    **Voting** –  Impaired and entitled to vote to accept or reject the Plan.

### Class 4

51.    **Classification** –   Priority Claims under Sections 507(a)(2),(3),(4),(5),(6), and (7) of the Bankruptcy Code.  Claims total approximately $0.

52.    **Treatment** – Payment in full in Cash of Allowed Amount on the Effective Date, plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

53.    **Voting–**Unimpaired and deemed to have accepted the Plan.

7

### Class 5

54.    **Classification** – General Unsecured Claims.  Claims total approximately $38,500

55.    **Treatment** – Payment of available Cash up to Allowed Amount of Class 5 Claims, after payment of Administrative Expenses, priority tax Claims, Class 1, 2, 3, and 4 Claims.

56.    **Voting** – Impaired and entitled to vote to accept or reject the Plan.

### Class 6

57.    **Classification** – Interests Holders.

58.    **Treatment** – Payment of available cash after payment of Administration Claims, unclassified priority tax Claims, and Class 1, 2, 3, 4 and 5 Claims.

59.    **Voting** – Impaired and entitled to vote to accept or reject the Plan.

### UNCLASSIFIED PRIORITY TAX CLAIMS

60.    Priority tax Claims under Sections 507(a)(8) of the Bankruptcy Code total approximately 0 based on the Debtor's Schedules and filed proofs of claim. The treatment of such Claims shall be payment in full in Cash of each Allowed Claim on the Effective Date, plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

### ADMINISTRATIVE EXPENSES

61.    Allowed Administrative Expenses shall be paid in full, in cash on the Effective Date, or the date such Administrative Expense becomes Allowed or as soon as

8

practicable thereafter, except if the holder of an Allowed Administrative Expense agrees to a

different treatment; provided, however, that Allowed Administrative Expenses representing

obligations in the ordinary course of business or assumed by the Debtor shall be paid in full or

performed by the Debtor in the ordinary course of business or under the terms and conditions of

the particular transaction.  The Debtor anticipates there will be unpaid Administrative Expenses

totaling approximately $20,000 for legal fees and $435,000 for real estate broker fees.

62.    All outstanding United States Trustee fees shall be paid as they come due.

## MEANS FOR IMPLEMENTATION

63.    **Source of Funds** – Payments under the Plan will be paid either from the

Property sale proceeds.  The sale of the Property shall be implemented pursuant to the Bidding

and Auction Procedures annexed as Exhibit "A" to the Plan. Prior to or on the Effective Date, the

Property shall be sold to Purchaser free and clear of all Liens, Claims, and encumbrances, with

any such Liens, Claims, and encumbrances to attach to the Property Sale Proceeds, and disbursed

in accordance with the provisions of this Plan.  For mortgage recording tax purposes, the First

and Second Mortgagees shall each permit an assignment of its mortgage in connection with the

sale of the Property under the Plan.  The Property shall be sold subject to entry of a Bankruptcy

Court order (i) approving the sale; (ii) providing, inter alia, that the Purchaser is a good faith

purchaser; and (iii) providing that the sale of the Real Property shall be free and clear of all liens,

claims, encumbrances and interests with any such liens, claims and encumbrances to attach to the

sale proceeds, and to be disbursed under the Plan.  Notwithstanding anything to the Contrary in

the Plan each Secured Creditor including the First and Second Mortgagees retains the right to

credit bid under the Plan to the extent of its Secured Claim, but in addition to its credit bid, to

9

ensure Plan feasibility, any bid by a Secured Creditor must include a cash component to cover

the costs of sale, Senior Lien Claims, Administrative Claims, Priority Claims, and a $15,000

reserve fund for the costs of wrapping up the case.

64.    **Sale Approval**–As part of the sale under the Plan, and in order to ensure

consummation of the Plan, the Plan requires that  the Confirmation Order contain the following

findings of fact and conclusions of law: (a)  that the terms and conditions of the sale are fair and

reasonable, (b) that the Debtor's sale, and the purchaser's purchase, of the Property pursuant to

the Plan and the purchase agreement, is non-collusive, fair and reasonable and was conducted

openly and in good faith, (c) that the transfer of the Property to the purchaser represents an arm's-

length transaction and was negotiated in good faith between the parties, (d) that the purchaser, as

transferee of the Property, is a good faith purchaser under Bankruptcy Code § 363(m) and, as

such, is entitled to the full protection of Bankruptcy Code § 363(m), (e) the sale of the Property

to the purchaser was not controlled by an agreement among potential purchasers, (f) that no

cause of action exists against the Purchaser or with respect to the sale of the Property to the

purchaser under Bankruptcy Code § 363(n), and (g) that any claims under Bankruptcy Code §

363(n) or any other claims as against the Purchaser are released, waived and discharged

65.    **Stamp Tax**–Under the Plan, pursuant to Bankruptcy Code § 1146(c), (a)

the issuance, transfer or exchange of any securities, instruments or documents, (b) the creation of

any other Lien, mortgage, deed of trust or other security interest, (c) the making or assignment of

any lease or sublease or the making or delivery of any deed or other instrument of transfer under,

pursuant to, in furtherance of, or in connection with, the Plan, including, without limitation, any

deeds, bills of sale or assignments executed in connection with the purchase of the Property by

10

the Purchaser and any other transaction contemplated under the Plan or the re-vesting, transfer or

sale of any real or personal property of the Debtor pursuant to, in implementation of, or as

contemplated in the Plan, and (d) the issuance, renewal, modification or securing of indebtedness

by such means, and the making, delivery or recording of any deed or other instrument of transfer

under, in furtherance of, or in connection with, the Plan, including, without limitation, the

Confirmation Order, shall not be subject any applicable document recording tax, stamp tax,

conveyance fee or other similar tax, mortgage tax, real estate transfer tax, or other similar tax or

governmental assessment.

66.    **Vesting**–Except as otherwise provided in the Plan, on the Effective Date

all assets and properties of the Estate shall vest in the Debtor free and clear of all Liens, Claims

and encumbrances and any and all liens, claims and encumbrances that have not been expressly

preserved under the Plan shall be deemed extinguished as of such date.  Except as otherwise

provided herein, as of the Effective Date, all property of the Debtor shall be free and clear of all

Claims and Interests of Creditors, except for the obligations that are imposed under the Plan or

by a Final Order of the Bankruptcy Court.

67.    **Execution of Documents**–The Debtor shall be authorized to execute, in

the name of any necessary party, any notice of satisfaction, release or discharge of any Lien,

Claim or encumbrance not expressly preserved in the Plan and deliver such notices to any and all

federal, state and local governmental agencies or departments for filing and recordation.

68.    **Recording Documents**–Each and every federal, state and local

governmental agency or department shall be authorized to accept and record any and all

documents and instruments necessary, useful or appropriate to effectuate, implement and

11

consummate the transaction contemplated by the Plan, including, but not limited to any and all notices of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved by the Plan, and the Confirmation Order.

## PAYMENT OF CLAIMS AND OBJECTIONS TO CLAIMS

69.    The Debtor shall be disbursing agent under the Plan without a bond.  The Debtor reserves the right to file objections to claims in the event grounds exist to object to particular claims, for a period of 60 days after the Effective Date.  On the initial distribution date and on each distribution date as may thereafter be necessary, the Debtor shall maintain an undetermined claims distribution reserve for the holders of undetermined claims as of such date in a sum not less than the amount required to pay each such undetermined claim if such claim was allowed in full.  To the extent that an undetermined claim becomes an Allowed Claim, the distributions reserved for such Allowed Claim, shall be released from the undetermined claims distribution reserve and paid to the holder of such Allowed Claim.  After all the amounts of all undetermined claims have been fixed, the balance of the undetermined claims distribution reserve shall thereafter be paid in accordance with the Plan.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

70.    Except for executory contracts and unexpired leases the Debtor assumes before the Confirmation Date, all unexpired leases and executory contracts shall be deemed rejected under the Plan.  In the event of a rejection which results in damages a proof of claim for such damages must be filed by the damaged party with the Court within sixty (60) days after the rejection date. All Allowed Claims arising from the rejection of any Executory Contract or unexpired lease shall be treated as Unsecured Claims.  Any Claim arising from the rejection of

12

any Executory Contract or unexpired lease not filed with the Court within the time period

provided herein shall be deemed discharged and shall not be entitled to participate in any

distribution under the Plan.

## RETENTION OF JURISDICTION

71.    Retention of Jurisdiction.  The Court shall have jurisdiction over all

matters arising under, arising in, or relating to the Debtor's Bankruptcy Case including, but not

limited to, proceedings:

- To consider any modification of the Plan under section 1127 of the Bankruptcy Code;

- To hear and determine all Claims, controversies, suits and disputes against the Debtor to the full extent permitted under 18 U.S.C. § 1334 and 28 U.S.C. § 157;

- To hear, determine and enforce all Claims and causes of action which may exist on behalf of the Debtor or the Debtor's Estate, including, but not limited to, any right of the Debtor or the Debtor's Estate to recover assets under the Bankruptcy Code;

- To hear and determine all requests for compensation and/or reimbursement of expenses which may be made;

- To value assets of the Estate.

- To enforce the Confirmation Order, the final decree, and all injunctions;

- To enter an order concluding and terminating the Bankruptcy Case;

- To correct any defect, cure any omission, or reconcile any inconsistency in the Plan, or the Confirmation Order;

- To determine all questions and disputes regarding title to the assets of the Debtor.

13

- To re-examine Claims which may have been allowed for purposes of voting, and to determine objections which may be filed to any Claims.

## **GENERAL PROVISIONS**

72.    **Headings**.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the meaning of the Plan.

73.    **Disputed Claims**.  The Debtor shall hold in escrow the distribution that would be due on account of any Disputed Claim.  No Disputed Claims shall be paid, nor shall distributions be made to a Creditor holding a Disputed Claim, until such Claim becomes an Allowed Claim.

74.    **Calculation of Time Periods**.  Bankruptcy Rule 9006 is incorporated to calculate the dates set forth herein.

75.    **Other Actions**.  Nothing contained herein shall prevent the Debtor, Interest Holders, or Creditors from taking such actions as may be necessary to consummate the Plan, although such actions may not specifically be provided for within the Plan.

76.    **Modification of Plan**.  The Debtor may seek amendments or modifications to the Plan under section 1127 of the Bankruptcy Code at any time prior to the Confirmation Date.  After the Confirmation Date, the Debtor may seek to remedy any defect or omission or reconcile any inconsistencies in the Plan or in the Confirmation Order, in such manner as may be necessary to carry out the purposes and intent of the Plan.

## **INJUNCTION AND PROPERTY OF THE ESTATE**

77.    **Injunction**.  The confirmation of this Plan shall constitute an injunction against the commencement or continuation of any action, the employment of process, or any act,

14

to collect, recover or offset from the Debtor or its Property or properties, any obligation or debt

except under the Plan.

## **CLOSING THE CASE**

Upon substantial consummation, the Debtor may move for a final decree to close

the Bankruptcy Case and to request such other orders as may be just.

Dated:  New York, New York
        March 30, 2023

307 Assets LLC

By:     s/ David Goldwasser, CRO


BACKENROTH FRANKEL & KRINSKY, LLP
Attorneys for Debtor


By:     s/Mark A. Frankel
        488 Madison Avenue
        New York, New York 10022
        (212) 593-1100

# Exhibit A to Plan

## BIDDING AND AUCTION PROCEDURES

These Terms and Conditions of Sale are promulgated in connection with the auction sale (the "Sale") of the real property located at 307-309 Sixth Avenue, New York, New York 10022 (the "Property").

Time and Place of Sale:  The Sale will be held on _____, 2023 at ____ __ m. at the offices of Backenroth Frankel & Krinsky, LLP, 488 Madison Avenue New York, New York 10022, or such other location as may be announced before the Sale.

Sale Pursuant to Chapter 11 Plan:  The seller of the Property is 307 Assets LLC (the "Debtor").

Sale free and Clear of Liens:  The Sale of the Property shall be free and clear of liens, claims, and encumbrances, with any such liens, claims and encumbrances to attach to the sale proceeds, and disbursed pursuant to order of the Bankruptcy Court.

Qualification to Bid:   In order to be qualified to bid on the Property, within seven days prior to the commencement of the Sale, each prospective bidder must deliver to the Debtor (a) a bank check in the amount of $750,000 ($750,000.00) (the "Qualifying Deposit") payable to "Backenroth Frankel & Krinsky, LLC, as Attorneys" (b) evidence reasonably demonstrating such bidder's ability to consummate a sale on the terms proposed, and (c) a written offer to purchase substantially in the form annexed hereto.  No later than one business day before the Sale, each bidder will be notified by the Debtor as to whether the Debtor deems such bidder qualified to bid at the Sale.

Bidding: Bidding shall be conducted openly at the Sale.  The opening bid shall be _____ ($_____).  Minimum bidding increments shall be Fifty Thousand Dollars ($50,000.00), subject to the Debtor's reasonable discretion at the Sale.

Successful Bidder Additional Deposit: At the Sale, once a bidder is determined to have made the highest or best bid for the Property at the Sale (the "Successful Bidder"), bidding shall be deemed closed and no additional bids will be considered.  Within one business day after the Successful Bidder is determined, the Successful Bidder shall be required to increase the Qualifying Deposit to an amount equal to ten percent of the winning bid, which amount shall serve as a good faith deposit against payment of the Purchase Price.  At the conclusion of the Sale, the Debtor's counsel will return the Qualifying Deposits to all other bidders except the second highest bidder (the "Backup Bidder").

Hearing to Approve Sale:  A sale approval hearing will be conducted by the Bankruptcy Court on the ___ day of _____, 2023 _____, at the United States Bankruptcy Court, One Bowling Green, New York, NY 10004 (the "Sale Hearing").

Sale Approval Order:  The order approving the sale shall contain the following findings of fact and conclusions of law: (a) that the terms and conditions of the Sale are fair and reasonable, (b) that the Sale and the Purchaser's purchase of the Property is non-collusive, fair and reasonable and was conducted openly and in good faith, (c) that the transfer of the Property to the Purchaser represents an arm's-length transaction and was negotiated in good faith between the parties, (d) that the Purchaser, as transferee of the Property, is a good faith Purchaser under Bankruptcy Code § 363(m) and, as such, is entitled to the full protection of Bankruptcy Code § 363(m), (e) the sale of the Property to the Purchaser was not controlled by an agreement among potential purchasers, (f) that no cause of action exists against the Purchaser or with respect to the sale of the Property to the Purchaser under Bankruptcy Code § 363(n), and (g) that any claims under Bankruptcy Code § 363(n) or any other claims as against the Purchaser are released, waived and discharged.

Closing:  The Successful Bidder must pay the balance of the Purchase Price for the Property (the difference between the amount of the successful bid and the Qualifying Deposit) to the Debtor, by bank check, or wire transfer at the closing of title to the Property (the "Closing").  The Successful Bidder must close title to the Property at a date that is no more than fifteen (15) days after the Order by the Bankruptcy Court is entered, TIME BEING OF THE ESSENCE.

Transfer Tax:  Purchaser shall be responsible for payment of any applicable document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, or other similar tax or governmental assessment including without limitation New York State Documentary Tax.

Damages for Failure to Close:  Time is of the Essence as against the Successful Bidder and the failure of the Successful Bidder to either timely pay the additional Qualifying Deposit or timely close for any reason whatsoever (except as otherwise provided below) including its failure to pay the balance of the Purchase Price on the Closing Date, will result in the Debtor retaining the deposit as liquidated damages and the termination of the Successful Bidder's right to acquire the Property under these Terms and Conditions of Sale.  The Successful Bidder shall be obligated to close title to the Property and there is no contingency of any kind or nature that will permit the Successful Bidder to cancel or avoid its obligation under these Terms and Conditions of Sale other than the Debtor's inability to deliver a bargain and sale deed to the Property.  Expenses incurred by the Successful Bidder, or any competing bidder relating to any due diligence, such as obtaining title reports or environmental inspections, shall be the sole responsibility of such bidder, and under no circumstances shall the Debtor or the Debtor's professionals be responsible for, or pay, such expenses.

2

Backup Bidder:  In the event that the Successful Bidder for the Property fails to tender the payment of the balance of the Purchase Price on the Closing Date, or otherwise perform any of its obligations under these Terms and Conditions of Sale, the Debtor, at its sole option, shall be authorized to sell the Property to the Second Highest Bidder without any further notice without giving credit for the Deposit forfeited by the Successful Bidder, and upon such other terms and conditions as the Debtor deems appropriate.  Should the Second Highest Bidder fail to close on the Property, within such time as the parties may agree but not to exceed thirty (30) days after notice from the Debtor to the Second Highest Bidder, the Debtor shall be authorized to sell the Property to the next highest or best bidder, without the necessity of any further notice.  All bidders will be bound by these Terms and Conditions of Sale, including, without limitation, those items set forth in the paragraphs above, except that the Second Highest Bidder must close within thirty (30) days of notification that his bid is accepted.  TIME IS OF THE ESSENCE.

No Representations:  the Debtor and the Debtor's professional have not made and do not make any representations as to the physical condition, rents, leases, expenses, operations, value of the land or buildings thereon, or any other matter or thing affecting or related to the Property or the Sale, which might be pertinent to the purchase of the Property, including, without limitation, (i) the current or future real estate tax liability, assessment or valuation of the Property; (ii) the potential qualification of the Property for any and all benefits conferred by or available under federal, state or municipal laws, whether for subsidies, special real estate tax treatment, insurance, mortgages, or any other benefits, whether similar or dissimilar to those enumerated; (iii) the compliance or non-compliance of the Property, in its current or any future state, with applicable present or future zoning ordinances or other land use law or regulation, or the ability to obtain a change in the zoning or use, or a variance in respect to the Property; (iv) the availability of any financing for the purchase, alteration, rehabilitation or operation of the Property from any source, including, but not limited to, any state, city or federal government or institutional lender; (v) the current or future use of the Property; (vi) the present and future condition and operating state of any and all machinery or equipment on the Property and the present or future structural and physical condition of any building thereon or its suitability for rehabilitation or renovation; (vii) the ownership or state of title of any personal property on the Property; (viii) the presence or absence of any laws, ordinances, rule or regulations issued by any governmental authority, agency or board and any violations thereof; (ix) any present or future issues concerning subdivision or non-subdivision of the Property; or (x) the compliance or non-compliance with environmental laws and the presence or absence of underground fuel storage tanks, any asbestos or other hazardous materials anywhere on the Property.  Each bidder shall be deemed to have agreed and acknowledged that no such representations have been made.  The Debtor is not liable or bound in any manner by expressed or implied warranties, guaranties, promises, statements, representations or information pertaining to the Property, made or furnished by the Debtor or any real estate broker agent, employee, servant or other person or professional representing or purporting to represent the Debtor unless such warranties, guaranties, promises, statements, representations or information are expressly and specifically set forth in writing by the Debtor.  For the avoidance of doubt, neither the Debtor nor the Debtor's

3

professionals are authorized to provide any such warranties, guaranties, promises, statements, representations or information.

As Is Sale: The Property is being sold free and clear of all liens, claims, and encumbrances, with any such liens, claims and encumbrances to attach to the net proceeds of sale after deduction of any expenses of sale.  Furthermore, the Property is being sold "AS IS", "WHERE IS" "WITH ALL FAULTS", without any representations, covenants, guarantees or warranties of any kind or nature whatsoever and subject to, among other things, (a) any state of facts that an accurate survey may show; (b) any covenants, restrictions and easements of record; (c) any state of facts a physical inspection may show; (d) any building or zoning ordinances or other applicable municipal regulations and violations thereof; and (e) environmental conditions, including, without limitation, the Property's compliance (or lack of compliance) with environmental laws and the presence or absence of underground fuel storage tanks, any hazardous materials or asbestos anywhere on the Property.  By delivering their respective Qualifying Deposits, each bidder is deemed to have acknowledged that it has had the opportunity to review and inspect the Property, the state of title thereof and laws, rules and regulations applicable thereto, and will rely solely thereon and on its own independent investigations and inspections of the Property in making its bid.  Neither the Debtor nor any of its representatives make any representations or warrantees with respect to the permissible uses of the Property, including but not limited to, the zoning of the Property.  All bidders are deemed to have acknowledged that they have conducted their own due diligence in connection with the Property, and are not relying on any information provided by the Debtor or its professionals.

Deed:  The Debtor, shall convey the Property by delivery of a bargain and sale deed without covenants against grantor's acts.

Broker:  The Debtor shall be liable only for the payment of fees of any broker retained by the Debtor under Bankruptcy Court order.

Conduct of Sale: These Terms and Conditions of Sale will be read into the record, or specifically incorporated by reference, at the Sale of the Property.  By making a bid for the Property, all bidders will be required to acknowledge these Terms and Conditions of Sale and agree to be bound by them.

Failure to Close:  If the Debtor is unable to deliver title to the Property in accordance with these Terms and Conditions of Sale for any reason whatsoever or in the event that the Bankruptcy Court refuses to approve the sale of the Property pursuant to Section 363 of the Bankruptcy Code, the Debtor's only obligation will be to refund the Deposit, together with interest earned thereon, if any, to the Successful Bidder, and upon such refund, the Successful Bidder will have no claim or recourse against the Debtor or its professionals.

Breakup Fee: None

<u>Credit Bidding</u>:  Notwithstanding anything to the contrary in these Bidding and Auction Procedures or in the Plan, the rights of Claimants to credit bid under Sections 363(k) and 1123 of the Bankruptcy Code are fully preserved.  If the First Mortgagee elects to credit bid for the Property, it shall be deemed a "qualified bidder" and shall not be required to provide any good faith deposit either prior to the auction as a condition to bidding, or after the auction should it be selected as "successful bidder."  To ensure Plan feasibility, any credit bid by a Claimant must include a cash component to cover the costs of sale, Senior Lien Claims, Administrative Claims, Priority Claims, and a $15,000 reserve fund for the costs of wrapping up the case.

<u>Bankruptcy Court Jurisdiction:</u>  The Bankruptcy Court shall determine any disputes concerning the Sale of the Property.  By participating in the Sale, all bidders consent to the jurisdiction of the Bankruptcy Court to determine such disputes under the Debtor's pending case.

CONTRACT dated as of the _____ day of _____, 2023 (this "Contract") , between 307 Assets LLC, (the "Seller" or "Debtor") and _____ having an address at _____ _____ ("Purchaser").

Seller and Purchaser hereby covenant and agree as follows:

1. Sale of Property

Paragraph 1.01. Seller shall sell or cause to be sold to Purchaser, and Purchaser shall purchase, at the price and upon the terms and conditions set forth in this Contract: the real property located at 307-309 Sixth Avenue, New York, New York 10022 (the "Property").  The sale of the Property includes (a) all of its appurtenances, including any estate, right, title, interest, property, claim and demand of Seller in and to all streets, alleys, rights-of-way, sidewalks, easements, any adjoining gores or strips of land and utility lines or agreements, including, without limitation, all development rights and "air rights"; and (b) all improvements, buildings and structures located on or at the Property and the facilities located thereon, and any apparatus, equipment, appliances and fixtures incorporated therein and used exclusively in connection with the operation and occupancy thereof.

Paragraph 1.02.   Purchaser acknowledges that the Sale shall be conducted pursuant to an Order of the United States Bankruptcy Court for the Southern District of New York (hereinafter the "Bankruptcy Court") in Case No. 23-10027 (JPM), wherein by Order entered _____, 2023, the "Bidding and Auction Procedures" (hereinafter the "Bidding Procedures") were approved, which Bidding Procedures are deemed annexed to this Contract.

Paragraph 1.03. Purchaser acknowledges that this sale is subject to and governed by (1) the Orders of the Bankruptcy Court, (2) the provisions of the United States Bankruptcy Code (hereinafter the "Code"), (3) the laws of the State of New York, to the extent they do not conflict with (1) and (2), above, and (4) the Bidding Procedures.

2. Purchase Price, Acceptable Funds

Paragraph 2.01. The purchase price ("Purchase Price") to be paid by Purchaser to Seller for the Property is (                                    ) Dollars or such other bid by the Purchaser approved by the Bankruptcy Court, payable as follows:

(A) on the signing of this Contract, by Purchaser's check payable to the Escrowee (as hereinafter defined), subject to collection, the receipt of which is hereby acknowledged, to be held in escrow pursuant to Bidding Procedures as defined in Article 3 hereof (the "Down Payment").

(B) THIS CONTRACT IS "ALL CASH" AS KNOWN IN THE COMMON PARLANCE.  PURCHASER'S OBLIGATIONS UNDER THIS CONTRACT ARE NOT CONDITIONED UPON PURCHASER'S ABILITY TO SECURE FINANCING OF ANY KIND OR NATURE.

(C) The balance at Closing (as hereinafter defined) in accordance with Section 2.02 hereof (the "Cash Balance")

Paragraph 2.02. All monies payable under this Contract, unless otherwise specified herein, shall be paid by (a) certified checks of Purchaser drawn on any federally insured bank, savings bank, trust company or savings and loan association having a banking office in the City of New York; (b) official bank checks drawn by any such banking institution, payable to the order of Seller (or as Seller shall direct) and bearing no endorsements; or (c) wire transfer of immediately available federal funds.  Attorney's Escrow Checks of Purchaser payable to the order of Seller (or as Seller directs) up to the amount of $1,000.00 in the aggregate shall be acceptable for sums other than the Purchase Price payable to Seller at Closing.

3. Escrow of Down Payment

Paragraph 3.01. (a) The Down Payment shall be paid by check or checks drawn to the order of and delivered to Backenroth Frankel & Krinsky LLP ("Escrowee").  The Escrowee shall hold the Down Payment in escrow in a non-interest-bearing IOLA account until the Closing or sooner termination of this Contract and shall pay over or apply the Down Payment in accordance with the terms of this section.  At the Closing, the Down Payment shall be paid by Escrowee in accordance with Bidding Procedures.  If for any reason the Closing does not occur and either party makes a written demand upon Escrowee for payment of such amount, Escrowee shall give written notice to the other party of such demand. If Escrowee does not receive a written objection from the other party to the proposed payment within 10 business days after the giving of such notice, Escrowee is hereby authorized to make such payment.  If Escrowee does receive such written objection within such 10-day period or if for any other reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by written instructions from the parties to this Contract or pursuant to an order of the Bankruptcy Court. However, Escrowee shall have the right at any time to deposit the escrowed proceeds and interest, if any, thereon, with the clerk of the Bankruptcy Court. Escrowee shall give written notice of such deposit to Seller and Purchaser. Upon such deposit Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.

(b) The parties acknowledge that Escrowee is acting solely as a stakeholder at their request and for their convenience, that Escrowee shall not be deemed to be the agent of either of the parties, and that Escrowee shall not be liable to either of the parties for any act or omission on its part unless taken or suffered in bad faith, in willful disregard of this Contract or involving gross negligence. Seller and Purchaser shall jointly and severally indemnify and hold Escrowee harmless from and against all costs, claims and expenses, including reasonable attorneys' fees,

2

incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith, in willful disregard of this Contractor involving gross negligence on the part of the Escrowee.

(c) Escrowee or any member of its firm shall be permitted to act as counsel for the Debtor in any dispute as to the disbursement of the Down Payment or any other dispute between the parties whether or not Escrowee is in possession of the Down Payment and continues to act as Escrowee.

(d) Escrowee acknowledges receipt of the Down Payment by certified, bank check subject to collection or wire transmission and Escrowee's agreement to these provisions by signing in the place indicated on the signature page of this contact.

4. The Closing

Paragraph 4.01. The conveyance of title to the Property by the Seller to Purchaser, and payment of the Cash Balance by Purchaser shall take place 15 days following the entry of an Order approving the Contract and the transaction embodied therein if that is a business day, and if not, the following business day (the "Closing"). The Closing is to be held at the office of the Escrowee, or such other location as designated by the Seller within the Southern District of New York. Purchaser will have a one time right to adjourn the Closing for up to five Business Days from the original date (such adjourned date, "Purchaser's Mandatory Closing Date"). Time is of the essence with respect to Purchaser's obligations to close title in accordance with this Contract on or before Purchaser's Mandatory Closing Date.

5.   Acknowledgments and Representations of Purchaser

Purchaser acknowledges and represents that:

Paragraph 5.01. Purchaser has inspected the Property, made all appropriate inquiries into the previous ownership and uses of the Property, is fully familiar with the physical condition and state of repair thereof, and shall accept the Property "as is" and in their present condition, including, without limitation, the environmental conditions as reflected in the Terms of Sale annexed hereto, without any reduction of the Purchase Price for any change in such condition by any reason thereof subsequent to the date of this Contract.  The Terms of Sale set forth conditions which Purchaser agrees to accept, including any covenant, easement, and/or deed restriction, and any other future obligation relating thereto.

Paragraph 5.02. Before entering into this Contract, Purchaser has made such examination of the Property, the physical condition and state of repair thereof including the environmental conditions. Purchaser acknowledges that it is an experienced real estate owner/operator and is relying solely on its own expertise and investigations and inspections in entering into this Contract and has not been induced by and has not relied upon any representations, warranties, or statements, whether express or implied, made by Seller or any agent, employee, or other

3

representative of Seller or by any other person representing or purporting to represent Seller, which are not expressly set forth in this Contract, whether or not any such representations, warranties or statements were made in writing or orally.

Paragraph 5.03. In the event of any default by the Purchaser in the terms of this Contract, the damages which are due to the Seller, by reason of said default, shall be deemed liquidated in the amount of the Down Payment, as Seller's sole remedy, it being agreed that Seller's damages in case of such default might be impossible to ascertain with mathematical precision and that the Down Payment constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty.

Paragraph 5.04. Purchaser represents that (a) it has the legal power, right and authority to enter into this Agreement and to consummate the transactions contemplated hereby and that all requisite action has been taken by Purchaser in connection with the entering into this Contract and the consummation of the transactions contemplated hereby;  (b) this Contract and all documents required hereby to be executed by Purchaser are and will be valid, legally binding obligations of and enforceable against Purchaser in accordance with their terms (c) Purchaser, and all direct or indirect beneficial owners of Purchaser, are in compliance with all applicable laws, statutes, rules and regulations of any federal, state or local governmental authority in the United States of America, including the requirements of Executive Order No. 13224, 66 Fed. Reg. 49079 (Sept. 25, 2001) (the "Order") and other similar requirements contained in the rules and regulations of the Office of Foreign Asset Control, Department of the Treasury ("OFAC") and in any related enabling legislation or other Executive Orders (collectively, the "Orders"). Neither Purchaser nor any of the direct or indirect beneficial owners of Purchaser  (i) is listed on the Specially Designated Nationals and Blocked Persons List maintained by OFAC pursuant to the Order and/or on any other list of terrorists or terrorist organizations maintained pursuant to any of the rules and regulations of OFAC or pursuant to any other applicable Orders (such lists are collectively referred to as the "Lists") or is owned or controlled by, or acts for or on behalf of, any Person on the Lists or who has been determined by competent authority to be subject to the prohibitions contained in the Orders; (ii) has been arrested for money laundering or for predicate crimes to money laundering, convicted or pled *nolo contendere* to charges involving money laundering or predicate crimes to money laundering; or (iii) has been determined by competent authority to be subject to the prohibitions contained in the Orders; (iv) is owned or controlled by, nor acts for or on behalf of, any natural person or entity (a "Person") on the Lists or any other Person who has been determined by competent authority to be subject to the prohibitions contained in the Orders; (v) will transfer or permit the transfer of any interest in Purchaser or such parties to any Person who is, or whose beneficial owners are, listed on the Lists; or (vi) will assign this Agreement or any interest herein, to any Person who is listed on the Lists or who is engaged in illegal activities.

6.  Destruction, Damage or Condemnation

Paragraph 6.01. The provisions of Section 5-1311 of the General Obligations Law shall not apply to the sale and purchase provided for in this Contract and Purchaser agrees to close

4

title to the Property regardless of any destruction, damage or condemnation that occurs after the execution and delivery of this Contract.

7.  Seller's Closing Obligations

At the closing, Seller shall execute and/or deliver or cause to be executed and/or delivered to Purchaser the following:

Paragraph 7.01. A bargain and sale deed without covenants against grantor's acts, executed by the Debtor in proper form for recording so as to convey to Purchaser the fee title to the Property, subject to recorded encumbrances and the other conditions of this Contract.

Paragraph 7.02. All required New York City and State transfer tax returns executed by the Debtor to be issued at the Closing and delivered to the representative of Purchaser's title company for delivery to the appropriate public officers promptly after the Closing.

Paragraph 7.03. The right to possession of the Property in condition required by this Contract, subject to the provisions hereinabove and to the provisions of the Code and the laws of the State of New York governing the rights to possession upon the conveyance of the deed subject to any Order of the Bankruptcy Court and the Bidding Procedures.  Seller shall not be obligated to bring any motion or proceeding for the purpose of obtaining possession of any part of the Property, or to remove any tenant or occupant therefrom after delivery of the Deed.

Paragraph 7.04.  Any other documents required by this Contract or by law to be delivered by Seller to consummate this transaction.

8.  Purchaser's Closing Obligations

At the Closing, Purchaser shall execute and/or deliver:

Paragraph 8.01.  The Cash Balance to the Debtor.

Paragraph 8.02.  All required New York City and State transfer tax returns, and cause all such returns to be issued at the Closing and delivered to the representative of Purchaser's title company for delivery to the appropriate public officers promptly after the Closing.  Purchaser will pay any and all applicable transfer taxes and recording fees.

Paragraph 8.03.  Any other documents required by this Contract or by law or reasonably required by Seller to be executed and/or delivered by Purchaser to consummate this transaction.

9.  Apportionments

Paragraph 9.01. The parties specifically acknowledge that there shall be no apportionments made as of the date of Closing, whether for taxes, water or sewer charges, emergency repair liens, assessments, rents, fuel, or any other matters relating hereto.

10.  Objections to Sale

Paragraph 10.01. This Contract shall automatically terminate if the Court rejects the Sale or if Seller shall be unable to cause title to the Property to be conveyed to Purchaser at the Closing Date or any adjournments thereof in accordance with the provisions of this Contract and the Bidding Procedures.  Purchaser nevertheless may elect either (i) to accept such title as Seller may be able to convey, but without any abatement of or other credit to the Purchase Price or liability on the part of Seller; or (ii) to terminate this Contract. The sole liability of Seller shall be to refund the Down Payment and interest thereon, if any, to the Purchaser and this Contract shall be null and void and the parties hereto shall be relieved of all further obligations and liability. Seller shall not be required to bring any action or proceeding or to incur any expense to cure any title defect or to enable Seller otherwise to comply with the provisions of this Contract, except as may otherwise be provided in this Contract.

Paragraph 10.02. Purchaser shall take title to the Property "as is" and subject to: any state of facts an accurate survey may show; encroachments, covenants, easements, and restrictions of record, if any; violations, fines, penalties, zoning regulations, and ordinances of the City of New York.  Purchaser is aware of and agrees to the Bidding Procedures which are incorporated in this Contract by this reference as though fully set forth herein at length.

11.  Notices

Paragraph 11.01. All notices under this Contract shall be in writing and shall be delivered personally, by nationally recognized overnight courier, addressed to Seller's Attorney, on behalf of the Seller, at the address set forth below, and to Purchaser addressed to Purchaser's Attorney at the address set forth below.

Seller's attorneys, Backenroth Frankel & Krinsky, LLP, 488 Madison Avenue, New York, New York 10022.

Purchaser's Attorney:


12.  Limitations on Survival of Representations, Warranties, Covenants and other Obligations

Paragraph 12.01. Except as otherwise expressly set forth in this Contract, no representations, warranties, covenants or other obligations of Seller and/or Purchaser set forth

herein shall survive the Closing except as specifically provided to survive, and no action based thereon shall be commenced after the Closing except as to such representations specifically provided to survive.

Paragraph 12.02. The delivery of the deed by the Seller and the acceptance thereof by Purchaser shall be deemed the full performance and discharge of every obligation on the part of Seller to be performed hereunder, except those obligations, if any, of Seller which are expressly stated in this Contract to survive.

13.  Assignment of Contract

Paragraph 13.01.  Purchaser shall not assign this Contract or its rights hereunder without the prior written consent of the Seller, whose consent will not be unreasonably withheld or delayed. Additionally, Purchaser may assign its rights under this Contract, but only immediately before the Closing and only simultaneously with the payment of the Cash Balance, to any wholly owned subsidiary of Purchaser, or to any entity in which Purchaser, or its principals, has an equity interest of at least fifty-one (51%) percent and control of management (a "Controlled Entity"), upon appropriate proof of same delivered to Seller.  Any purported assignment without Seller's consent or that is not to a Controlled Entity with proof of such relationship given to Seller shall be void.  Any sale, transfer or assignment of any interests in Purchaser will be deemed an assignment of this Contract and is subject to the same conditions as an assignment of this Contract. Nevertheless, an assignment of Purchaser's rights under this Contract, if and when consented to by Seller, shall not be effective unless and until an executed counterpart of the instrument of assignment and of an assumption agreement by the assignee shall have been delivered to Seller.

Paragraph 13.02.  Seller shall assign pending tax certiorari actions, if any, to Purchaser without any representations or warranties, and without any further obligation of Seller, except to execute such documents as may be necessary to effectuate such assignment.

14.  Miscellaneous Provisions

Paragraph 14.01 THE PROVISIONS OF THE BIDDING PROCEDURES AND THE ORDERS OF THE COURT ARE A PART OF THIS CONTRACT. ANY CONFLICT WITH SUCH IN THIS CONTRACT WILL NOT BE DEEMED TO AMEND OR ALTER SAID PROCEDURES OR ORDERS.

Paragraph 14.02. Subject to the provisions of Paragraph 14.01, this Contract embodies and constitutes the entire understanding between the parties with respect to the transaction contemplated hereby, and all prior agreements, understandings, representations and statements, oral or written, are merged into this Contract. Neither this Contract nor any provision hereof may be waived, modified, amended, discharged, or terminated except by an instrument signed by the party against whom the enforcement of such waiver, modification, amendment, discharge, or termination is sought, and then only to the extent set forth in such instrument.

Paragraph 14.03.  This Contract shall be governed by, and construed in accordance with, the Bankruptcy Code and the Orders of the Bankruptcy Court and, where it does not conflict with the Bankruptcy Code or any Order of the Bankruptcy Court or the Bidding Procedures, the laws of the State of New York. The Bankruptcy Court shall have the exclusive jurisdiction to determine any disputes concerning the sale of the Property or any other matters under this Contract.

Paragraph 14.04. The captions in this Contract are inserted for convenience or reference only and in no way define, describe, or limit the scope or intent of this Contract or any of the provisions hereof.

Paragraph 14.05. This Contract shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs or successors and permitted assigns.

Paragraph 14.06. This Contract shall not be binding or effective until properly executed and delivered by Seller and Purchaser, together with all amounts required to be paid pursuant to 2.0l (A) hereto.  This Contract may be executed in counterparts each of which will constitute an original and all of which, when taken together, will constitute one and the same agreement.  A signed counterpart of this Contract delivered by electronic transmission will be treated as an original.

Paragraph 14.07. As used in this Contract, the masculine shall include the feminine and neuter, the singular shall include the plural, and the plural shall include the singular, as the context may require.

Paragraph 14.08. Subject to Paragraph 14.01, if the provisions of any schedule or rider to this Contract are inconsistent with the provisions of this Contract, the provisions of such schedule or rider shall prevail.

IN WITNESS WHEREOF, the parties hereto have executed this Contract as of the date first above written.

307 Assets LLC, Seller                                    Purchaser:


By: _____          By: _____
      Name:                                                    Name:
      Title:                                                     Title:
Backenroth Frankel & Krinsky, LLP, Escrowee:


By: _____
      Name:
      Title:

8

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

In re                                                    Chapter 11

      307 Assets LLC                                 Case no.  23-10027 (JPM)

                           Debtor.

--------------------------------------------------------x

## NOTICE OF SALE

          PLEASE TAKE NOTICE, that upon the application of 307 Assets LLC ("Debtor"), the real property located at 307-309 Sixth Avenue, New York, New York 10022 shall be sold to the highest bidder at an auction sale to be conducted on _____, 2023 at _____ at the offices of Backenroth Frankel & Krinsky, LLP, 488 Madison Avenue, New York, New York 10022.  The Property shall be sold "as is."  Bidding shall be limited to all cash offers, and the minimum opening bid shall be $_____, and shall be increments of $50,000. All prospective bidders shall be required to deposit $750,000 (the "Deposit") in escrow with the undersigned counsel by bank check or wire deposit on or before _____, 2023 at 5:00 p.m.  Subject to the approval of the Bankruptcy Court at a hearing ("Hearing") to be held on _____ at _____ __.m., or as soon thereafter as counsel can be heard, before the Honorable _____ at the One Bowling Green, New York, NY 10004, the highest bidder shall be the purchaser (the "Purchaser") of the Property, free and clear of all liens, claims commercial leases not assumed under the Plan and encumbrances, with any such liens, claims and encumbrances to attach to the proceeds of sale.  The Deposit shall be non-refundable. In the event the Purchaser closes on or before fifteen days after the entry of an order approving the sale, the Deposit shall be applied to the purchase price.  In the event Purchaser fails to close on or before fifteen days after the entry of an order approving the sale, the Deposit shall be remitted to the Seller.  Time shall be of the essence in the closing of this transaction.  In the event Purchaser fails to close as set forth herein, then the Seller shall have the right to accept the bid next highest in amount to the original Purchaser's bid.

          PLEASE TAKE FURTHER NOTICE, that a complete copy of the terms and conditions of sale is filed in the Bankruptcy Court and is available upon request of the undersigned.

Dated:  New York, New York
          _____, 2023

                                                 Backenroth Frankel & Krinsky, LLP
                                               488 Madison Avenue
                                               New York, New York 10022
                                               (212) 593-1100

## EXHIBIT B TO DISCLOSURE STATEMENT

## ASSETS AND LIABILITIES

| Assets | |
|---|---|
| Real Property and misc. personal property | $14,500,000 |

| Liabilities | |
|---|---|
| Administration Claims | $455,000 |
| NYC Lien Claims | $83,366 |
| First Mortgage Claim | $15,077,472 |
| Second Mortgage Claim | $7,500,000 |
| Priority Claims under Sections 507(a)(2),(3),(4),(5),(6), and (7) of the Bankruptcy Code. | 0 |
| General Unsecured Claims | $38,500 |
| Interest Holders | -0- |
| **Total** | $23,124,338 |

## CHAPTER 7 LIQUIDATION ANALYSIS

| Assets | |
|---|---|
| Real Property and misc. personal property | $14,500,000 |

| Liabilities | |
|---|---|
| Administration Claims | $1,450,000 |
| NYC Lien Claims | $83,366 |
| First Mortgage Claim | |
| Second Mortgage Claim | $12,966,634 |
| Priority Claims under Sections 507(a)(2),(3),(4),(5),(6), and (7) of the Bankruptcy Code. | 0 |
| General Unsecured Claims | $0 |
| Interest Holders | $0 |
| **Total** | $14,500,000 |

Note: All claim amounts subject to objection.